# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JEFFREY ALAN BENJAMIN <br><br> Defendant. | Case No. 3:21-CR-525-MGL <br><br> **DEFENDANT JEFFREY ALAN BENJAMIN'S REPLY IN SUPPORT OF MOTION TO DISMISS SUPERSEDING INDICTMENT** |

**Table of Contents**

Page

I. INTRODUCTION ...................................................................................................................2

II. ARGUMENT ..........................................................................................................................2

    A. The Fifth Amendment Requires Alleging the Essential Facts, as well as the Essential Elements, of the Charges ...........................................................................2

    B. The Superseding Indictment Fails to Allege the Essential Facts and Elements regarding Securities Fraud by a Purported Westinghouse Conspiracy ....................4

        1. The Superseding Indictment Fails to Allege That Mr. Benjamin Made Any Statements "In Connection" With Any Securities. .....................4

        2. The Superseding Indictment Fails to Allege that Mr. Benjamin Aided and Abetted SCANA's Alleged Securities Fraud .............................5

        3. The Superseding Indictment Fails to Allege that Mr. Benjamin Caused SCANA's Alleged Securities Fraud...............................................6

        4. The Superseding Indictment Fails to Allege False Statements Material to Investors .................................................................................8

    C. The Superseding Indictment Fails to Allege Any Use of the Wires in Furtherance of the Purported Wire Fraud Conspiracy ................................................9

    D. The Superseding Indictment Fails to Allege that Mr. Benjamin Agreed to Join the Purported Conspiracy.............................................................................................11

    E. The Superseding Indictment Fails to Allege that Mr. Benjamin Made Knowingly False Statements.........................................................................................................13

        1. The Superseding Indictment Alleges a Negligent State of Mind, Not Criminal Knowledge .............................................................................14

        2. The Superseding Indictment Fails to Allege that Mr. Benjamin Made a Knowingly False Statement ............................................................16

    F. The Superseding Indictment Fails to Allege a Knowing Violation of 15 U.S.C. § 78m(b)(2)(A)..........................................................................................................18

III. CONCLUSION......................................................................................................................19

I.    INTRODUCTION

Rather than confront Mr. Benjamin's arguments, the government's response misconstrues the Motion to Dismiss as an improper bid for summary judgment in the civil context. Contrary to the government's suggestion, the motion's length reflects not sufficient notice, but rather the number and severity of the Superseding Indictment's failures. Ironically, despite accusing the Motion to Dismiss of relying on disputed facts, the government attempts to account for the missing allegations of the Superseding Indictment with speculative assertions and inferences in its brief. Mr. Benjamin, however, has a Constitutional right to an independent and unbiased grand jury that finds probable cause to support every element of the charged crimes and to allege the essential facts constituting the offense charged against him. The Superseding Indictment simply cannot be allowed to slide through on the government's assurances that all the essential facts will, eventually, come out at trial. Accordingly, this Court should dismiss the Superseding Indictment for failure to meet the minimal Fifth Amendment requirements.[1]

II.   ARGUMENT

    A.    **The Fifth Amendment Requires Alleging the Essential Facts, as well as the Essential Elements, of the Charges**

Despite quoting the Fourth Circuit's requirement that an indictment do more than merely allege the elements of the crime or parrot the statute, *see* Dkt. 158 at 3, the government wrongly claims that merely reciting the elements in the Superseding Indictment is sufficient to defeat the Motion, *see id.* at 5-8. Recognizing that more is required, however, the government also attempts to rehabilitate the Superseding Indictment by arguing that the court should infer, or a

---

[1] The Defense has also moved to dismiss the Superseding Indictment for grand jury bias, *see* Dkt. 161, and for disclosure of grand jury materials related to its impartiality, *see* Dkt. 160.

petit jury will be able to find, the essential facts that have not been expressly alleged by the grand jury. Not so.

The grand jury itself must allege the essential facts. *See Russell v. United States*, 369 U.S. 749, 770 (1962) ("To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."). The prosecution cannot supplement the facts alleged in an indictment. *See United States v. Jenkins*, 675 F. Supp. 2d 647, 653 (W.D. Va. 2009) ("The prosecution cannot save a defective indictment by providing its meaning. The indictment must speak for itself.").

The government's constant reliance here on inferences and gloss in order to articulate the essential elements and facts is contrary to the principle, articulated by the Supreme Court in *Russell*, that "'[t]he very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" 369 U.S. at 770-771. Ambiguities and inadequacies in an indictment cannot be corrected by subsequent briefing, because "[t]o allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendants of a basic protection which guarantee of the intervention of a grand jury was designed to secure." *Id.* Taken at face value, the Superseding Indictment must be dismissed because it does not contain the minimum statement of "essential facts" —not merely some added context or detail, but pivotal facts—constituting the offenses charged. *See United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002); *see also*

*United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) ("[T]he surplusage set out in connection with allegations of mailing, and the masking of acts, documents[,] or conduct innocuous in themselves by appellations of 'falsity' did more to confuse than to clarify.").

> **B.** **The Superseding Indictment Fails to Allege the Essential Facts and Elements regarding Securities Fraud by a Purported Westinghouse Conspiracy**
>
> **1.** **The Superseding Indictment Fails to Allege That Mr. Benjamin Made Any Statements "In Connection" With Any Securities.**

Although the Superseding Indictment alleges certain statements by Mr. Benjamin, the government does not contest the Motion's argument that none of them are "in connection" with securities. *Compare* Dkt. 143-1 at 37-41, *with* Dkt. 158 at 15-18. Mr. Benjamin's alleged statements to SCANA, even if allegedly fraudulent, are insufficient as a matter of law to support a *securities* fraud charge. *See* Dkt. 143-1 at 38-39 (citing, e.g., *Zoelsch v. Arthur Andersen & Co.*, 824 F.2d 27, 34 (D.C. Cir. 1987) ("We decline to find the 'in connection with' requirement satisfied by statements made privately to an accounting firm that it may have credited later when it put together an audit report that was distributed to investors.")). In *Zoelsch*, the defendant's statements to his client were found by the court to be separate from the client's subsequent statements to its investors, which the defendant had no part in preparing. Consequently, the court held that the defendant was not responsible for the actual statements to investors, even if his statements to his client were allegedly fraudulent. *See id.* at 34-35.

Here, similarly, the provision of scheduling information from Westinghouse—regardless of the government's allegations of inaccuracy—was not "in connection with" SCANA's ultimate securities disclosures. The Superseding Indictment never alleges that any of SCANA's public statements was crafted with the assistance or input of Mr. Benjamin or anyone else at Westinghouse. Indeed, the government's allegations in other cases have recognized that SCANA was making independent disclosure decisions with the advice of its counsel. *See* Dkt.

4

143-1 at 8 ("[The Marsh and Byrne] criminal informations detail a conspiracy 'consisting of former SCANA Corporation … executives, employees, and the lawyers who advised them.'") (quoting Marsh Information at ¶ 27); Complaint at ¶¶ 189-191, 198-202, *S.E.C. v. SCANA Corp., et al.*, No. 3:20-cv-00882-GML (D.S.C. Feb. 27, 2020) (describing the role of SCANA's counsel in concealing SCANA's knowledge of risks to the project). The government offers no argument in response, effectively conceding that the Superseding Indictment fails to allege a violation of 18 U.S.C. § 1348(1) directly by Mr. Benjamin. Therefore, Count 15 must be dismissed.

      **2.    The Superseding Indictment Fails to Allege that Mr. Benjamin Aided and Abetted SCANA's Alleged Securities Fraud**

Having abandoned its theory of a direct violation of § 1348, the government defaults to arguing that at least the Superseding Indictment sufficiently alleges "aiding and abetting" culpability. *See* Dkt. 158 at 15-16. But this is wrong. As the Motion to Dismiss argued, an essential element of aiding and abetting is knowledge of the underlying crime. *See* Dkt. 143-1 at 22 ("[T]here is no allegation whatsoever that Mr. Benjamin knew anyone else was committing a crime that might have been aided or abetted."). Because the Superseding Indictment fails to allege that Mr. Benjamin knew at the time that SCANA was (allegedly) going to commit securities fraud, the Superseding Indictment fails to allege an essential element of the 18 U.S.C. § 2 charge, and it must be dismissed. *See Rosemond v. United States*, 572 U.S. 65, 76-77 (2014) ("To aid and abet a crime, a defendant must not just 'in some sort associate himself with the venture,' but also 'participate in it as in something that he wishes to bring about' and 'seek by his action to make it succeed.'") (quoting *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949)); *United States v. Moye*, 422 F.3d 207, 213 (4th Cir. 2005) ("To prove association, the Government must establish that the defendant participated in the principal's criminal intent,

5

which requires that a defendant be cognizant of the principal's criminal intent and the lawlessness of his activity."). The government offers no response.

Indeed, the Superseding Indictment never alleges that Mr. Benjamin was aware of SCANA's allegedly false disclosures, let alone *intentionally* false disclosures. The government's brief nevertheless posits that "Defendant knew SCANA was a publicly traded company, and that this was a top-of-mind project about which investors had a keen interest." Dkt. 158 at 16. These new allegations are conspicuously absent from the Superseding Indictment and were not presented to the grand jury; and thus they are irrelevant. *See Jenkins*, 675 F.Supp.2d at 653.

Even with the government's additional factual material, however, there is still no allegation that Mr. Benjamin *knew* that SCANA was committing a crime. Regardless what the government "anticipates the evidence at trial will show," Dkt. 158 at 15, it is a "settled rule in the federal courts that an indictment may not be amended except by resubmission to the grand jury …," and if it fails to contain sufficiently specific allegations, it is invalid, and the court must dismiss it, *Russell v. United States*, 369 U.S. 749, 770. *See also United States. v. Keuylian*, 23 F.Supp.3d 1126, 1128 (C.D. Cal. 2014) ("An indictment that fails to set forth a sufficient factual basis for the charges must be dismissed; a bill of particulars cannot save it.") Consequently, Counts 15 and 16 must be dismissed entirely.

### 3. The Superseding Indictment Fails to Allege that Mr. Benjamin Caused SCANA's Alleged Securities Fraud

The government's brief tries to paint the defense as conceding that "SCANA was, in fact, caused to make false representations" Dkt. 158 at 16. Nothing could be further from the truth.[2] SCANA was not "caused" to do anything of the sort. Rather, SCANA independently chose what

---

[2] The Motion's observation that SCANA has had "disclosure issues" was in no way a concession that SCANA violated the securities laws.

to disclose and what to conceal, as the government itself has detailed in other matters. *See* Dkt. 143-1 at 8-16. Lacking any allegations in the Superseding Indictment to establish the securities charges, the government again resorts to recharacterizing and supplementing the allegations. Specifically, the government describes Paragraph 44 as alleging that "Defendant's representations … gave SCANA's executives … the cover they needed to mislead the public." Dkt. 158 at 16. In truth, Paragraph 44 merely quotes a SCANA 10-Q. The Superseding Indictment alleged nothing—and therefore the grand jury found nothing—about Mr. Benjamin *causing* SCANA's quoted disclosure. Instead, the Superseding Indictment alleges the opposite.

In paragraph 41, the Superseding Indictment quotes what Mr. Benjamin allegedly said at a meeting with the Owners. The language quoted by the Superseding Indictment is materially different than what SCANA's 10-Q said about the meeting, which the Superseding Indictment also quotes in Paragraph 44. Whereas Mr. Benjamin allegedly said that he did not know "the dates" were "not achievable," SCANA misrepresented that statement as being that "WEC … had no reason to believe that the August 2019 and August 2020 guaranteed substantial completion dates would not be met." *Compare* Dkt. 129 at ¶ 41, *with id.* at ¶ 44. Therefore, on its face, the Superseding Indictment recognizes that SCANA was not "hiding behind" what Mr. Benjamin said, as the government now tries to characterize it. Instead of reliance on Mr. Benjamin, the Superseding Indictment shows that SCANA was twisting what Mr. Benjamin (allegedly) said for its own purposes. The Motion made this point explicitly, *see* Dkt. 143-1 at 29-30, and the government completely ignored it.[3] The language of the Superseding Indictment controls here, and the government cannot supplement or replace it with language it now prefers. *See Russell*,

---

[3] Without reference to the Superseding Indictment, the government posits that, "had Defendant been forthright about the schedule in 2016 … then SCANA would likely have been forced to disclose the truth." Dkt. 158 at 16 n.4. That speculation is neither true nor relevant.

7

369 U.S. at 770; *Jenkins*, 675 F.Supp.2d at 653; *Keuylian*, 23 F.Supp.3d at 1128. Consequently, Counts 15 and 16 must be dismissed.

### 4. The Superseding Indictment Fails to Allege False Statements Material to Investors

In addition to trying to reconfigure the securities fraud charges by adding novel facts, the government's brief also makes the mistaken argument that materiality is categorically a jury question. *See* Dkt. 158 at 16-17. Notwithstanding *United States v. Mora*, courts are not powerless to decide questions of materiality as a matter of law. *Compare* 15 Fed. App'x 98, 103 (4th Cir. 2001), *with Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 657 (4th Cir. 2004) ("The only requirement is that no reasonable jury could find it substantially likely that a reasonable investor would find the fact at issue material in the 'total mix' of information."); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 ("[M]ateriality [is] appropriately resolved as a matter of law" when "reasonable minds cannot differ on the question.").

As detailed in the Motion to Dismiss, extensive case law establishes that no reasonable juror could conclude that investors find predictions of future performance to be material. *See* Dkt. 143-1 at 43-47. The government's brief argues that Mr. Benjamin made more than just predictions because (allegedly) his statements were "targeting scheduling matters and deadlines worth $1.4 billion to Owners, their customers, and their stakeholders." Dkt. 158 at 17. Regardless, as courts have held repeatedly, it is not that the future events are themselves immaterial or insignificant, but rather that investors know better than to put weight on such predictions. *See* Dkt. 143-1 at 43-44 (citing, e.g., *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993) ("No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market.")). Moreover, SCANA's disclosures, as quoted by the Superseding Indictment, warned of risks to the schedule. *See* Dkt. 143-1 at 45.

Accordingly, the alleged statements to investors were not materially false or misleading, and Counts 15 and 16 must therefore be dismissed.[4]

        **C.     The Superseding Indictment Fails to Allege Any Use of the Wires in Furtherance of the Purported Wire Fraud Conspiracy**

The Superseding Indictment does not adequately allege that Mr. Benjamin used the wires "in furtherance" of any fraud. Although the Superseding Indictment added the phrase "in furtherance" to parrot the statutory requirements, that alone is inadequate. *See Brandon*, 298 F.3d at 310. The Superseding Indictment fails to allege the essential facts regarding how the fourteen wire transfers identified in Paragraph 68 were in furtherance of a scheme to fraud. Nor, as the government suggests, is this a factual question to be resolved at trial. Dkt. 158 at 17-18.

As a matter of law, the wire payments identified in the Superseding Indictment were not "in furtherance" of any fraud, because they were—as the Superseding Indictment itself acknowledges—made in connection with a contractual relationship entitling Westinghouse to be paid for the work that it performed at V.C. Summer. *See* Dkt. 143-1 at 49-50 (citing Dkt. 129 at ¶¶ 11-12, 20, 26, 58). There is no allegation that Westinghouse was not performing the work that the parties' contract obligated in exchange for the wire payments. Consequently, the payments for services rendered and contractually due to Westinghouse "in no way affected the success of the scheme" alleged in the Superseding Indictment. *United States v. Keenan*, 657

---

[4] The government did not secure pleas from either SCANA executive to criminal securities fraud, and it never charged SCANA at all, despite its position that "viable" charges would have been possible. *See* Dkt. 158 at 19 n.5. Nor did the SEC secure any admissions of civil securities fraud from SCANA or its executives. The government blames this outcome on "the Court's acceptance of pleas from Messrs. Marsh and Byrne," but another explanation for the government's total failure to secure an admission of securities fraud from anyone connected to SCANA is that the government cannot sustain a compelling case of *securities* fraud—despite the admitted fraud by Messrs. Marsh and Byrne directed at state utility regulators.

9

F.2d 41, 43 (4th Cir. 1981).  Ultimately, the alleged monthly payments described in Counts 2-14 were routine, contractually required payments—not part of any purported fraud.

The government's argument to explain the wire payments as "in furtherance" of a fraud depends on a series of facts never alleged in the Superseding Indictment about a scheme to sell new AP1000 projects.  *See* Dkt. 158 at 17-18.  To the contrary, the Superseding Indictment alleges that the object of the purported conspiracy was to "minimiz[e] regulatory risk and avoid[] legislative oversight, all for the purpose of obtaining money from the Owners."  Dkt. 129 at ¶ 1.  Fundamentally, the purported scheme appearing for the first time in the government's brief is inconsistent with the Superseding Indictment, which never alleges that Westinghouse was not contractually entitled to those payments.  The government cannot now introduce for the first time the allegation that the Owners might have had any basis to refuse to pay Westinghouse for the work it had performed.  *See* Dkt. 158 at 18.

As with its efforts to revise the other charges, the government invites the Court to make inferences from the Superseding Indictment and to inject facts to support its arguments.  But the government's approach relies on constitutionally impermissible guesswork about what the grand jury found.  The government's need to rely in its brief on numerous facts that do not appear in the Superseding Indictment is only a further demonstration that the Superseding Indictment's allegations are insufficient.  The government cannot now recharacterize the fraud to be something other than what the Superseding Indictment alleges, any more than it could identify new uses of the wires never found by the grand jury.  *See Jenkins*, 675 F.Supp.2d at 652-653 ("The prosecutor is supplying the indictment's meaning.  An indictment, however, must speak for itself."); *see also Russell v. United States*, 369 U.S. at 770; *Keuylian*, 23 F.Supp.3d at 1128.  Although the Superseding Indictment charges Mr. Benjamin with wire fraud, the use of the wires

10

alleged by the Superseding Indictment was simply not in furtherance of the scheme to defraud alleged in the Superseding Indictment. Consequently, Counts 2-14 must be dismissed.

### D. The Superseding Indictment Fails to Allege that Mr. Benjamin Agreed to Join the Purported Conspiracy

The government cannot identify an allegation of the essential facts regarding when, with whom, and how Mr. Benjamin reached an agreement to join a conspiracy. *See* Dkt. 158 at 14. Instead, the government merely suggests that an agreement could be inferred. That is not the same thing as the grand jury finding probable cause to believe an agreement occurred and alleging it in the Superseding Indictment, and neither the prosecution nor the Court may rehabilitate an indictment by reading missing allegations into it. *See Russell v. United States*, 369 U.S. at 770; *Jenkins*, 675 F.Supp.2d at 653; *Keuylian*, 23 F.Supp.3d at 1128. The constant need of the government to put a gloss on the Superseding Indictment highlights its inadequacy.

The government describes "Paragraphs 25, 30, 31, 32, 33, 35, 37, 38, and 39" as alleging Mr. Benjamin's "actions in concert with other members of Westinghouse." *Id.* at 14. But they are patently insufficient, alone or in aggregate. In fact, Paragraphs 25, 32 and 35 make no mention of Mr. Benjamin at all. Only by virtue of the government's inferences and suppositions in its brief could these paragraphs be understood to relate to, let alone actually allege, an agreement by Mr. Benjamin to conspire. Similarly, Paragraph 31 describes a SCANA securities disclosure, not conduct by Mr. Benjamin. Even the government's response brief does not attempt to argue that Mr. Benjamin conspired with anyone at SCANA, so Paragraph 31 is entirely irrelevant to the missing "agreement" element. Further, Paragraphs 33 and 37, although alleging conduct by Mr. Benjamin, do not make any reference to anyone else at Westinghouse, let alone an *agreement to conspire* with someone else at Westinghouse. Similarly, Paragraphs 38 and 39, although alleging conduct involving Mr. Benjamin and others at Westinghouse, never

11

allege that any of the others at Westinghouse were co-conspirators. The government's brief merely makes that assertion now.

Moreover, Paragraph 30—emphasized by the government as an allegation of an agreement to conspire—merely describes Mr. Benjamin as attending a meeting where someone else answered a question about whether "the schedule was achievable." Merely being present when someone else makes a misstatement—or even commits a crime—is insufficient *as a matter of law* to support a conspiracy. See Dkt. 143-1 at 41 (citing *See United States v. Lorenzo*, 534 F.3d 153, 159-60 (2d Cir. 2008) ("[A] defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy[.]") (quoting *United States v. Samaria*, 239 F.3d 228, 235 (2d Cir. 2001)); *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973) ("Mere knowledge or approval, without participation, does not make one a party to a conspiracy.")).

Regardless, unlike the government's brief, the Superseding Indictment stops far short of alleging in Paragraph 30 that Mr. Benjamin was knowingly at the scene of a crime. There is no allegation that Mr. Benjamin knew at the time that the other person's alleged statement was inaccurate, let alone fraudulent. Nor is there any allegation that the speaker was or became a co-conspirator in the crimes charged against Mr. Benjamin. Rather, it is just the government's gloss in its brief that this individual was an unindicted co-conspirator. The government's gloss cannot substitute for the grand jury's failure to allege an element of a crime.

Indeed, the government, apparently recognizing that the allegations in Paragraph 30 do not establish the essential facts regarding an agreement to conspire, adds more flavor—nowhere alleged by the grand jury—that Mr. Benjamin gave "approval" for the allegedly false statement by someone else in Paragraph 30. But the grand jury did not allege that Mr. Benjamin acted or

12

communicated with a co-conspirator—to give approval or otherwise—and the government's effort to cobble together inferences and new facts cannot save the Superseding Indictment. The grand jury's allegations that Mr. Benjamin interacted with colleagues at Westinghouse cannot be transmuted into an allegation of a criminal agreement to conspire by the government's *post hoc*, circular rationalization that everyone involved will be shown at trial to have been a co-conspirator. Nor can the government's assertion that it will seek to prove an agreement at trial compensate for the lack of findings by the grand jury.

Based on the allegations actually appearing in the Superseding Indictment, it is impossible for Mr. Benjamin to discern even a single person with whom he is alleged to have conspired. This is not a question of whether all the conspirators must be named, *contra* Dkt. 158 at 15, but rather when and how Mr. Benjamin allegedly joined the alleged conspiracy. The Superseding Indictment's failure to reference co-conspirators (by name, position, or even pseudonym) only highlights the lack of even minimal notice of the purported conspiracy. Although the government's response indicates that the government has specific unindicted co-conspirators in mind and has simply chosen not to name them, *see* Dkt. 158 at 14-15, there has been no finding by the grand jury that such people were, in fact, co-conspirators of Mr. Benjamin. The government's citations to cases involving *unknown* co-conspirators are thus inapposite. Mr. Benjamin is not alleged to have agreed with *anyone at all*—at least beyond a conclusory recitation of the elements that does not pass constitutional muster. Consequently, Count 1 must be dismissed.

      **E.    The Superseding Indictment Fails to Allege that Mr. Benjamin Made Knowingly False Statements**

Throughout its opposition, the government argues that the defense is seeking to introduce new facts or litigate the sufficiency of the evidence, including the alleged falsity of Mr.

13

Benjamin's statements. Dkt. 158 at 9-10. This misleading presentation of the motion to dismiss misses the point. The Superseding Indictment fails to allege the essential facts regarding Mr. Benjamin's participation in a scheme to defraud, and challenging the absence of explicit allegations of essential facts is not "disputing" facts. Notwithstanding the government's effort to rehabilitate the Superseding Indictment with new allegations, the Superseding Indictment fails to allege Mr. Benjamin's participation in a scheme to defraud for several reasons.

### 1.     The Superseding Indictment Alleges a Negligent State of Mind, Not Criminal Knowledge

The Superseding Indictment was revised to add the allegation, in several critical paragraphs, that Mr. Benjamin "knew or had reason to know" that his statements were false. Superseding Indictment at ¶¶ 24, 43, 53, 72. It is insufficient—as a matter of law—for the grand jury to have found only that Mr. Benjamin "had reason to know" that his statements were false. The grand jury's use of the disjunctive in "knew or had reason to know" compels the conclusion that the grand jury did *not* find that Mr. Benjamin, in fact, knew his statements were false. *See* Dkt. 143-1 at 23 (citing *United States v. Guarascio*, No. 5:04-CR-45-02-F, 2012 WL 12952674, at *3 (E.D.N.C. May 24, 2012)).

Although the government argues that willful blindness can satisfy the knowledge element of the crimes charged against Mr. Benjamin, *see* Dkt. 158 at 11, the Superseding Indictment does not charge Mr. Benjamin with willful blindness. As the Motion explained (Dkt. 143-1 at 31), willful blindness would require that Mr. Benjamin both (i) "subjectively believe that there is a high probability that a fact exists" and (ii) "take deliberate actions to avoid learning of that fact." *United States v. Jinwright*, 683 F.3d 471, 480 (4th Cir. 2012) (citing *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011)). The Superseding Indictment never alleges that Mr. Benjamin was subjectively aware of a high probability that a fact existed, or that he took

deliberate action to avoid learning any facts at all.  As such, the Superseding Indictment falls conspicuously short of alleging the elements of willful blindness, which the Motion clearly explained.  *See* Dkt. 143-1 at 31. The government has no response.

This is not a question of the defense "twist[ing] a phrase" in the Superseding Indictment.  The only "twisting" here is the government's effort to reshape the Superseding Indictment.  On its face, the Superseding Indictment plainly does not allege the factual predicates for willful blindness.  Despite the government's appeal to the "charging language" to save the Superseding Indictment (Dkt. 158 at 11), the factual allegations of the Superseding Indictment cannot be ignored.  And merely reciting the statutory elements is insufficient.  *See Brandon*, 298 F.3d at 310.  Moreover, when it came time to allege the mental state of the defendant, the grand jury—likely recognizing that at its heart this is a civil commercial dispute—used language describing civil negligence, *not* willful blindness.  The government thus not only seeks to have the Court find an implied allegation of the essential facts of willful blindness but also to ignore an express allegation of a *different* mental state—negligence.

In a last-ditch effort to avoid the language used by the grand jury, the government argues that the petit jury might find willful blindness at trial.  According to the government's brief, "the evidence at trial will demonstrate … conduct with the appropriate mental state." *See id.*  It is black letter law, however, that the grand jury must allege every element of the offense—the government cannot compel a defendant to challenge substantial and liberty-threatening allegations by resorting to trial to solve deficiencies in the pleadings.  *See Russell*, 369 U.S. at 770; *Jenkins*, 675 F.Supp.2d at 653; *Keuylian*, 23 F.Supp.3d at 1128.  Consequently, Counts 1-16 must be dismissed.

### 2.  The Superseding Indictment Fails to Allege that Mr. Benjamin Made a Knowingly False Statement

The government asserts that the so-called "charging paragraphs" (Paragraphs 62-63) adequately allege knowing false statements by Mr. Benjamin (Dkt. 158 at 10), but the government conflates such a recitation of the statutory elements with providing the "essential facts" necessary to provide constitutional notice. *United States v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004); *Brandon*, 298 F.3d at 310. Not only do the "charging paragraphs" not contain the essential elements of the crimes, but they are also at times inconsistent with the Superseding Indictment's own factual allegations. For instance, Paragraph 63(i) alleges that Mr. Benjamin "[r]epresented to the Owners on or about September 26, 2016, that Westinghouse had no information that the substantial completion dates of June 2019 (Unit 2) and June 2020 (Unit 3) would not be met." Dkt. 129 at ¶ 63(i). But, according to Paragraph 41, Mr. Benjamin was never asked whether particular dates *would* be met, only whether they *could not* be met. *Id.* at ¶ 41 ("According to contemporaneous notes, during the meeting, SCANA's CEO asked: 'Do you know of anything today that tells you [the] dates [are] not achievable?' According to the same notes, [Mr. Benjamin] answered by saying 'no, nothing today.'"). The difference is significant, given the Superseding Indictment's allegation that Mr. Benjamin knew the project could be finished on schedule with "unprecedented improvements in pace and productivity"—*i.e.*, that the schedule was achievable. *Id.* at ¶ 31.[5]

---

[5] The government asserts that the Superseding Indictment alleges that Mr. Benjamin knew a "miracle needed to happen" (Dkt. 158 at 12), but the Superseding Indictment states "unprecedented improvements," not "impossible improvements." Similarly, the government's brief entirely abandons the four corners of the Superseding Indictment to draw numerous inferences from Paragraph 31 that were not actually found by the grand jury, such as that the production tax credit deadline "was a material and consequential fact for all parties involved" and that "[t]he Project's doomed status was known in real time by Defendant." *Id.* To the

16

Thus, the defense is not "ignoring … the charging paragraphs" like Paragraph 63(i), as the government suggests (Dkt. 158 at 10), but rather highlighting that the factual allegations of the Superseding Indictment do not provide the essential facts required for those charges. The conclusory "charging paragraphs" may track the statutory language, but they cannot substitute for—let alone contravene—factual allegations. *See* Dkt. 143-1 at 17-18 (citing *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("Although the Government is not required to set forth its entire case in the indictment, 'if the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense.") (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)).

Recognizing the insufficiency of Paragraphs 62-63 standing alone, the government attempts to re-plead other paragraphs in an effort to create an allegation that "Mr. Benjamin did not believe his own statements when he made them." Dkt. 158 at 10-11 (citing Dkt. 129 at ¶¶ 34-40). But that is not what the grand jury actually found. Whereas Paragraph 34 alleges that Mr. Benjamin "received" a letter that included the language, "the current schedules are unrealistic," the Superseding Indictment subsequently alleges that Mr. Benjamin was asked whether "the dates are not achievable"—an entirely different question than whether the current schedule was realistic. *Compare* Superseding Indictment at ¶ 34, *with id.* at ¶ 41.[6]

---

contrary, the Superseding Indictment acknowledges that the Project could have been completed but Santee Cooper chose to cancel it. *See* Superseding Indictment at ¶¶ 60-61.

[6] The government's response also describes the Superseding Indictment as alleging that Mr. Benjamin was "advis[ed]" that "the current schedule was unrealistic and that further reliance on it would be unethical" (Dkt. 158 at 11). In fact, the Superseding Indictment quotes a letter to Carl Churchman, which Mr. Benjamin allegedly "received," that asserted, "Relying on such unrealistic schedules will lead to needless expenditure of funds and an overall increase in the cost of the project." Superseding Indictment at ¶ 34. But, as the Superseding Indictment itself acknowledges, Westinghouse was working on a fixed-price contract at the time and any inefficiency or cost-overruns would be borne solely by Westinghouse. *See id.* at ¶¶ 20, 26.

Conspicuously, the Superseding Indictment never alleges that Mr. Benjamin subjectively believed that the "current schedule" *was* unrealistic or that he subjectively believed that "the dates" were *not* achievable—let alone that one could, and certainly not that Mr. Benjamin did, connect whether "the current schedule" being unrealistic (or not) was related to "the dates" being achievable (or not). That is, the Superseding Indictment never alleges the facts essential to the element of *knowledge* that is required for culpability under 18 U.S.C. §§ 1341, 1343, and 1348, and which the constitution thus requires to be pleaded in the indictment. Only with the government's introduction of new facts can its brief even attempt to explain the Superseding Indictment as alleging a knowingly false statement.

In the absence of any allegation by the grand jury that Mr. Benjamin's statement in Paragraph 41 was *knowingly* false, as opposed to objectively inaccurate, the government hopes that the petit jury will infer that he subjectively knew it was false. *See* Dkt. 158 at 11.[7] The grand jury process and the Sixth Amendment, however, impose fundamental protections to ensure that defendants like Mr. Benjamin only need to defend themselves once the grand jurors find probable cause to believe that each and every element of each criminal offense has been met. Consequently, Counts 2-16 must be dismissed.

### F.     The Superseding Indictment Fails to Allege a Knowing Violation of 15 U.S.C. § 78m(b)(2)(A)

In addition to alleging that Mr. Benjamin only had "reason to know" certain statements were false, the Superseding Indictment also alleges only that he had "reason to know" the essential facts regarding the books and records charge. *See* Dkt. 129 at ¶ 72. The statute is clear,

---

[7] Contrary to the government's response, Dkt. 158 at 13-14, the relevance of "good faith" at this stage is to highlight that the law requires more than mistakenly false statements and, thus, the Superseding Indictment must allege the essential facts regarding the *mens rea* of knowledge.

18

however, that only a knowing violation can establish criminal culpability. *See* Dkt. 143-1 at 41-42 (citing 15 U.S.C. § 78m(b)(2)(B)(4)). Moreover, the Superseding Indictment alleges nothing about how Mr. Benjamin himself maintained any of SCANA's books and records. *See id.* at 42. The government offers no response to the failure of the Superseding Indictment to allege that Mr. Benjamin knowingly violated any part of 15 U.S.C. § 78m or knowingly caused a violation thereof. Given the grand jury's use of the "reason to know" language to allege Mr. Benjamin's mental state, it is legally impossible that he committed such crimes. *See*, *supra*, Part II.E.1.

Instead—as with securities fraud—the government defends only the sufficiency of the charge that Mr. Benjamin aided and abetted a violation of § 78m(b)(2)(A). *See* Dkt. 158 at 15-16. The Superseding Indictment also fails, however, to allege the essential facts related to aiding and abetting a violation of § 78m(b)(2)(A), because it does not allege that Mr. Benjamin knew about any underlying violation of the statute that he might have aided and abetted. *See*, *supra*, at Part II.B.2. Accordingly, Count 16 must be dismissed.

## III.    CONCLUSION

Fundamentally, the government has tried to stretch its case against SCANA and its executives to reach Mr. Benjamin, who did not work for SCANA or have the same duties and obligations as its executives. Both the original indictment and Superseding Indictment conspicuously cut-and-paste allegations that the government made against Messrs. Marsh and Byrne—SCANA executives—in a specious attempt to style them as crimes of Westinghouse and Mr. Benjamin. But the Superseding Indictment fails to allege the essential facts regarding how Mr. Benjamin committed any of these crimes. Accordingly, the Superseding Indictment must be dismissed.

Respectfully submitted,

*/s/Andrew B. Moorman, Sr.*

>
> MOORMAN LAW FIRM, LLC
> 416 East North Street 2nd Floor
> Greenville, South Carolina 29601
> 864-775-5800
> andy@andymoormanlaw.com
> Federal ID # 10013
>
> William M. Sullivan, Jr.
> Thomas C. Hill
> Patrick Hovakimian
> PILLSBURY WINTHROP SHAW PITTMAN LLP
> 1200 Seventeenth Street, NW
> Washington, DC 20036
> Phone: 202-663-8027
> wsullivan@pillsburylaw.com
> thomas.hill@pillsburylaw.com
> patrick.hovakimian@pillsburylaw.com
> *Admitted Pro Hac Vice*
>
> *Counsel for Defendant Jeffrey Benjamin*

Date:  June 7, 2023